# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ZEBRA TECHNOLOGIES CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> FACTORY MUTUAL INSURANCE COMPANY, <br><br> Defendant. | No. 20-cv-05147 <br><br> Judge John F. Kness |

## MEMORANDUM OPINION AND ORDER

Plaintiff Zebra Technologies Corporation, a provider of mobile enterprise computing products and services, sells its products around the world. Predictably, the onset of the COVID-19 pandemic in early 2020 and the ensuing disruption to the global supply chain severely impacted Plaintiff's business. These dire financial consequences prompted Plaintiff to make a claim with its insurer, Defendant Factory Mutual Insurance Company, under six parts of an insurance policy that Defendant issued to Plaintiff. After Defendant denied the claim, Plaintiff sued Defendant.

Defendant now moves for partial judgment on the pleadings and to dismiss the complaint to the extent it relies upon coverage under five of the six parts of the Policy. Defendant argues that a Contamination Exclusion in the Policy excludes coverage, and separately that five of the six provisions under which Plaintiff sought coverage

are limited to claims for "physical loss or damage," which does not extend to the injuries suffered as a result of the pandemic.

As explained below, the world-altering events of the COVID-19 pandemic—although indisputably damaging—are not covered under the Policy. The injuries alleged by Plaintiff do not constitute "physical" losses or damages, and those injuries are independently barred by the Policy's Contamination Exclusion. Accordingly, because Plaintiff's claims fail as a matter of law, Defendant's motion for partial judgment on the pleadings is granted.[1]

## I. BACKGROUND

Plaintiff is a provider of mobile enterprise computing products and services. (Complaint ("Compl."), Dkt. 1, ¶ 8.) In 2020, COVID-19 erupted into a worldwide pandemic, causing millions of infections and hundreds of thousands of deaths. (*Id.* ¶ 12.) The pandemic, as well as the immediate responses of governmental authorities to mitigate the spread of the virus, also disrupted supply chains, including that of Plaintiff. (*Id.* ¶¶ 17-18, 20.) Plaintiff has suffered in other ways as well: employees at some of Plaintiff's facilities have tested positive for COVID-19; government orders have restricted Plaintiff's access to facilities and required Plaintiff to modify its facilities to accommodate social distancing and sanitation measures; Plaintiff has had to purchase supplies (at higher rates) from companies with which it does not normally

---

[1] Also pending before the Court is Plaintiff's motion to strike the portions of Defendant's Reply brief that address whether COVID-19 can constitute a physical loss or damage if it can be "cleaned up." (*See* Dkt. 28.) Because this Court rules that, as a matter of law, the injuries alleged by Plaintiff to have resulted from the COVID-19 pandemic cannot constitute "physical" losses or damages, the Court will not address the "cleaned up" argument raised in the parties' briefing.

work; and Plaintiff has experienced lower sales as a result of business disruptions to its direct and indirect customers and suppliers. (*Id.* ¶ 22.)

Defendant had previously issued an insurance policy to Plaintiff for the period January 1, 2020 to January 1, 2021 (the "Policy"). (*Id.* ¶ 10, Exh. A at 1.[2]) As a result of the pandemic and the resulting governmental responses, Plaintiff sought coverage under several provisions of the Policy. Defendant, however, declined coverage under the Policy. (*Id.* ¶ 23). Plaintiff then brought this action for breach of contract (Count I) and declaratory relief (Count II). (*Id.* ¶¶ 25-37). After filing its answer and raising several affirmative defenses (Dkt. 10), Defendant filed a motion for partial judgment on the pleadings. (Dkt. 18.) Defendant asks this Court to dismiss with prejudice Counts I and II to the extent those counts rely upon coverage under the above-listed provisions of the Policy—save for the Communicable Disease Response provision, the applicability of which Defendant does not dispute. (*See* Dkt. 19 at 2.)

## II.    LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment after both the plaintiff's complaint and the defendant's answer have been filed. Fed. R. Civ. P. 12(c). Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). As with a motion to dismiss, the court must construe the complaint's allegations liberally in favor of the insured. *Berg v. N.Y. Life Ins. Co.,* 831 F.3d 426, 430 (7th Cir. 2016). To succeed on a motion for judgment on the pleadings, the moving

---

[2] Throughout this order, page citations to the Policy (Dkt. 1, Exh. A) refer to the page numbers of the Policy (those listed at the bottom of each page).

3

party "must demonstrate that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). This standard is demanding and requires a showing "beyond doubt" that the nonmovant cannot prove any facts that support its claim for relief. *Id.*

### III. DISCUSSION

Plaintiff's complaint contains two counts, both of which allege, in essence, that Defendant breached its contractual obligations to Plaintiff by failing to provide coverage under the Policy. (Compl., ¶¶ 25-37.) Plaintiff contends that coverage exists under six parts of the Policy: (1) the Communicable Disease Response provision; (2) the Protection and Preservation of Property provision; (3) the Gross Earnings and Gross Profit provisions; (4) the Extra Expense provision; (5) the Civil and Military Authority provision; and (6) the Contingent Time Element provision. Defendant, however, argues that it has no obligation to Plaintiff under all but the Communicable Disease Response provision. (*See* Dkt. 19 at 9.)

The five categories of coverage at issue in this motion do not extend to Plaintiff under the circumstances alleged in the complaint for two reasons: *first*, because they are each limited to "physical" losses or damages, and *second*, because of the Policy's Contamination Exclusion.

### A. "Physical Loss or Damage"

Many of the Policy's categories of coverage—including the five at issue in Defendant's motion (Dkt. 18)—require that the insured party have incurred a "physical" loss or damage:

4

- The Protection and Preservation of Property provision covers "reasonable and necessary costs incurred for actions to temporarily protect or preserve insured property; provided such actions are necessary due to actual, or to prevent immediately impending, insured *physical loss or damage* to such insured property" (Compl., Exh. A at 35 (emphasis added));

- The Gross Earnings and Gross Profit provisions, as well as the Extra Expense provision, cover "loss[es] . . . directly resulting from *physical loss or damage*" (*id.* at 40 (emphasis added));

- The Civil and Military Authority provision covers "the Actual Loss Sustained and extra expense incurred by the Insured during the period of liability if an order of civil or military authority limits, restricts or prohibits partial or total access to an insured location provided such order is the direct result of *physical damage* of the type insured at the insured location or within five statute miles/eight kilometres [sic] of it" (*id.* at 53 (emphasis added)); and

- The Contingent Time Element provision covers "the Actual Loss Sustained and extra expense incurred by the Insured during the period of liability directly resulting from *physical loss or damage* of the type insured" (*id.* at 54 (emphasis added)).

Defendant argues that the presence of a virus does not constitute a "physical" loss or damage. (Dkt. 19 at 10.) Plaintiff, by contrast, claims that "the word 'physical' merely means 'having material existence: perceptible . . . and subject to the laws of nature . . . .'" (Dkt. 22 at 5-6 (quoting *Henderson Rd. Rest. Sys. Inc. v. Zurich Am. Ins. Co.*, No. 1:20 CV 1239, 2021 WL 168422 (N.D. Ohio Jan. 19, 2021).) On Plaintiff's account, COVID-19 causes "physical" loss because COVID-19 has "material existence." (*Id.*; *see also* Compl. ¶ 16.)

Defendant's interpretation of "physical loss or damage" is correct. "'[P]hysical loss' refers not to *any* deprivation, but rather to a deprivation caused by a tangible or concrete change in the condition or location of the thing that is lost." *G.O.A.T. Climb & Cryo, LLC v. Twin City Fire Ins. Co.*, No. 20 C 5644, 2021 WL 2853370, at *3 (N.D. Ill. July 8, 2021); *see Bend Hotel Dev. Co. v. Cincinnati Ins. Co.*, 515 F. Supp. 3d 854,

5

857 (N.D. Ill. 2021) (noting that, at the time it was decided, "every court in this district that ha[d] interpreted similar provisions under Illinois law ha[d] concluded that the virus does not cause 'direct physical loss or damage' to property").

Indeed, numerous recent decisions have explained that a plaintiff's purely economic loss does not constitute "physical loss or damage" to property. *See Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693 (N.D. Ill. 2020) (the policy language of "direct physical loss" unambiguously requires some form of actual, physical damage to the insured's premises to trigger coverage); *Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, No. 20 C 3463, 2021 WL 633356, at *3 (N.D. Ill. Feb. 18, 2021) (same); *T&E Chi., LLC v. The Cincinnati Ins. Co.*, 501 F. Supp. 3d 647, 652 (N.D. Ill. 2020) (loss of use of property without any physical change to that property cannot constitute direct physical loss or damage to the property).[3]

These decisions represent a clear consensus that COVID-19 does not cause physical loss or damage. For the same reasons provided in those earlier decisions, this Court agrees. Plaintiff does not allege there was any physical damage that would satisfy the requirement of "physical loss or damage" and thus trigger coverage under

---

[3] To be sure, some decisions in this District have interpreted a similar "physical loss" provision to cover business income losses caused by government-imposed COVID-19 closure orders. *See, e.g.*, *Derek Scott Williams PLLC v. The Cincinnati Ins. Co.*, No. 20 C 2806, 2021 WL 767617, at *4 (N.D. Ill. Feb. 28, 2021) (term "physical loss" in insurance policy broad enough to cover the plaintiff's deprivation of the use of its business premises following imposition of COVID-19 shutdown order); *In re Soc'y Ins. Co. Covid-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2964 2021 WL 679109 (N.D. Ill. Feb. 22, 2021) (similar). But disagreement among courts regarding the interpretation of a policy provision does not, by itself, render the provision ambiguous. *See Erie Ins. Grp. v. Sear Corp.*, 102 F.3d 889, 894 (7th Cir. 1996) (rejecting the argument that an insurance policy term was ambiguous "on the basis of conflicting case law" interpreting the term).

those provisions of the Policy. Accordingly, Defendant did not owe coverage under the provisions that include that limitation.

### B. The Contamination Exclusion

Even if coverage could otherwise exist under the five categories challenged by Defendant, Plaintiff's claim is barred under the Policy's Contamination Exclusion. That provision provides that "contamination" losses are not covered under the Policy:

> "Th[e] Policy excludes the following unless directly resulting from other physical damage not excluded by this Policy: 1) contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such contamination may be insured."

(Compl., Exh. A at 17.)

In turn, the Policy defines "contamination" as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, *virus*, disease causing or illness causing agent, fungus, mold or mildew." (*Id.* at 74 (emphasis added).)

It is well settled that, in construing an insurance contract, a clause in a policy "which is clear and unambiguous will be applied as written." *Am. Standard Ins. Co. v. Allstate Ins. Co.*, 569 N.E.2d 162, 165 (Ill. App. Ct. 1991). Where an exclusionary clause "is relied upon to deny coverage, its applicability must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured." *Int'l Mins. & Chem. Corp. v. Liberty Mut. Ins. Co.*, 522 N.E.2d 758, 762 (Ill. App. Ct. 1988).

7

Save for any coverage under the Communicable Disease Response provision, which Defendant does not contest, the Contamination Exclusion precludes Plaintiff's recovery. When the Policy is "examine[d] . . . as a whole" and its provisions are interpreted "according to their plain, ordinary, and popular meanings," *Am. Standard Ins. Co.*, 569 N.E.2d at 165, the Contamination Exclusion bars recovery under the five parts of the Policy at issue in this order. Accordingly, even if the relevant provisions were not limited to "physical" losses and damages, the Plaintiff is independently entitled to judgment on the pleadings under that provision.

### III. CONCLUSION

For the reasons provided above, Defendant's motion for partial judgment on the pleadings is granted. Plaintiff's motion to strike part of Defendant's reply brief (Dkt. 28) is denied as moot.

SO ORDERED in No 20-cv-05147.

Date: September 29, 2021

JOHN F. KNESS
United States District Judge